## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MDR CONSTRUCTION CO., INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 22-10238-FDS |
| ) | |
| VETERANS CONSTRUCTION, LLC, ) | |
| and GREAT MIDWEST INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DEFENDANT VETERANS CONSTRUCTION'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND PLAINTIFF'S MOTION TO STRIKE

SAYLOR, C.J.

This is an action for payment for work performed by plaintiff MDR Construction Co., Inc. at the Bedford Plains Veterans Affairs campus in Bedford, Massachusetts. MDR, the primary subcontractor for the project, has brought suit against Veterans Construction, LLC, the general contractor, and Great Midwest Insurance Company, the surety. MDR alleges that Veterans has failed to pay MDR $71,333.55 for its work on the contract, and that Great Midwest has breached its duty to make payment under the payment bond that it provided.

According to MDR, it completed all work in a timely matter and complied with its contractual obligations. Indeed, it is undisputed that Veterans certified to the Department of Veterans Affairs that (with one minor exception) all work on the project was complete, and that it intended to pay MDR in full from the payment made to it by the VA. The VA then paid Veterans in full.

It is also undisputed that Veterans withheld payment from MDR in the amount of

$71,333.55.  MDR alleges that the failure of Veterans arises out of a personal dispute between the president of Veterans, Frank Kemp, and Michael Saccone, his counterpart at MDR.  In fact, Kemp freely acknowledged in his deposition that he did not make payment to MDR because he felt that Saccone had "denigrated" him in front of his employees.

Veterans, however, now claims that the reason it did not pay MDR is because it has not received a complete set of as-built drawings.  It is undisputed that MDR provided as-built drawings directly to the VA.  MDR contends that it did so because Veterans instructed it to; Veterans contends that the contract requires submission of the drawings to it, and that any instruction to the contrary cannot modify MDR's contractual obligations.  It further contends that in any event the drawings were incomplete and inadequate.  Not surprisingly, MDR contends that those stated reasons were fabricated after the fact.

MDR has moved for partial summary judgment on its breach of contract claim.  Veterans has cross-moved for partial summary judgment on the claims against it for fraud and violation of Mass. Gen. Laws ch. 93A, § 11.  In addition, MDR has moved to strike the motion for partial summary judgment and portions of the affidavit of Ken Duquette, a Veterans employee.

Unfortunately for MDR, this matter involves disputed issues of material fact that preclude summary judgment in its favor.  There is, to be sure, substantial evidence that Veterans deliberately breached the contract for purposes of personal spite, and not due to any material breach by MDR.  If MDR can successfully prove that claim, it may be entitled, among other things, to treble damages and attorney's fees under Mass. Gen. Laws ch. 93A.  Under the circumstances, however, the Court has no alternative but to deny summary judgment as to the breach of contract claim.

The cross-motion of Veterans for partial summary judgment will likewise be denied, on

the ground that it was not filed until nearly three weeks after the court-ordered deadline, without leave of court and without good cause shown.  The motion of MDR to strike the affidavit is without merit and will be denied.

Accordingly, and for the following reasons, the motion of MDR for summary judgment will be denied, the motion of Veterans for summary judgment will be denied, and the motion of MDR to strike will be denied.

I.   **Background**

The following facts are undisputed unless otherwise noted.

A.   **Factual Background**

On March 21, 2019, the Department of Veterans Affairs ("VA") entered into a contract with Veterans Construction, LLC to upgrade hot water and plumbing at the Bedford Plains VA campus in Bedford, Massachusetts.  (Plaintiff's SUF ¶ 1).  MDR Construction Co., Inc., entered into a subcontract agreement with Veterans concerning the project on May 29, 2019.  (*Id.* at Exhibit 10).  The original subcontract sum was $4,284,928.65.  (*Id.* at ¶ 3).  It later increased, after change orders, to $8,359,478.53.  (*Id.*).

The subcontract provided in part as follows:  "[T]he Contractor will pay the Subcontractor within seven days after receipt of payment by the Contractor from the owner. When the Subcontractor's Work is substantially completed in accordance with the contract documents and accepted by the Architect/Engineer and Owner, the Contractor will, on the Subcontractor's application, apply to the Owner for a reduction of retainage.  All amounts paid by the Owner to the Contractor for the Subcontractor's Work shall be paid to the Subcontractor less amounts determined for incomplete Work and unsettled claims as provided in the Contract Documents.  Final retainage shall be paid within seven days after the Contractor receives it from the Owner."  (*Id.* at ¶ 39).  In addition, the prime contract between Veterans and the

3

VA "expressly prohibits a contractor from requesting payment for any amount withheld from a subcontractor." (*Id.* at 37).

Over the course of the project, Veterans periodically billed the VA. (*Id.* at ¶ 6). On November 19, 2021, it made its final payment request to the VA for the "remaining $30,688.51 of the $9,197,337.22 total contract price, minus . . . $1,000 of uncompleted work." (*Id.* at ¶ 7; *Id.* at Exhibit 3). In its final request, Veterans made at least four representations to the VA: (1) that all of the work in each of the seven phases of the project was 100% complete (*Id.* at Exhibit 3, pp. 2-4); (2) that there remained only $1,000 of "uncompleted" work (*Id.* at Exhibit 3, 1); (3) that it had already paid MDR from the previous payments received under the contract and would timely pay MDR in full from the proceeds of the payment covered by the certification (*Id.*); and (4) that the request for payment did not include any amounts that Veterans "intend[ed] to withhold or retain" from MDR. (*Id.*).

Veterans thereafter received final payment from the VA. (*Id.* at ¶ 12). It is undisputed that it was paid in full on the project; that it represented to the VA that all project work was complete; that it affirmed that it would not seek a "lesser amount for itself by virtue of any legitimate withholding"; and that it had previously made periodic payments to MDR. Nonetheless, it still withheld $71,333.55 from MDR. (Plaintiff's SUF ¶ 11-13, 18, 40, 45; *Id.* at Exhibit 12).

According to MDR, the nonpayment stems from a personal dispute between the president of Veterans, Frank Kemp, and his counterpart at MDR, Michael Saccone. During his deposition, Kemp testified: "I stopped payment when Mr. Saccone denigrated me in front of one of his employees." (Docket No. 51, Exhibit A, 15). Kemp also agreed that he did not "resume payments after that point in time" because he "didn't want to pay someone was going to say

negative things about [him]." (*Id.* at 15-16).

Veterans contends that it is withholding payment from MDR due to MDR's "refusal to provide Veterans with an adequate and complete set of As-Built Drawings as required by the Subcontract Agreement." (Docket No. 52, 7). It is undisputed that Article 7 of the subcontract expressly states that "[f]inal payment shall be due only when the Subcontractor shall furnish the Contractor . . . as-built drawings, maintenance manuals and warranties for the Subcontractor's work." (Docket No. 51, Exhibit D). Furthermore, Veterans alleges that when it "sought final payment from the VA, [it] had neither actual nor constructive knowledge that MDR would withhold the As-Built Drawings, O&Ms, and warranty letters." (Docket No. 52, 6).

MDR, in turn, asserts that it was instructed to submit the as-built drawings directly to the VA, and the VA confirmed that the drawings were appropriate. It is undisputed that meeting minutes of Veterans from January 20, 2021, state: "Red line as-builts were reviewed at meeting and all was satisfactory, Robert Miller [of the VA] has request[ed] As-Builts be turned into VA at completion of each phase." (Plaintiff's SUF ¶ 21). It is also undisputed that MDR "followed this process at the completion of each phase" as well as "after the final phase of the Project on October 21, 2021." (*Id.* at ¶ 22-23).

In addition, as detailed in MDR's subcontract agreement with Veterans, MDR "agree[d] to perform the subcontractor's work in a good and workmanlike manner to the satisfaction of the *architect/engineer*." (*Id.* at ¶ 30) (emphasis added). It is undisputed that the "architect/engineer" here was the VA Contract Officer Representative, Brian Reid. (*Id.* at ¶ 30-31). On February 23, 2021, Reid, "stated that the VA had accepted MDR's as-builts as of October 21, 2021, and all work was complete on the project." (Docket No. 47, 5).

Nevertheless, Veterans maintains that an oral instruction "[does] not negate MDR's

contractual obligation to submit the As-Built Drawings only to Veterans as required by the subcontract."  (Docket No. 52,  ¶ 14).  In addition, Veterans alleges that "the [VA] Contracting Officer, Mr. Coutermarsh, ultimately nullified Mr. Reid's unauthorized acceptance of the As-Built Drawings on behalf of the VA."  (*Id.* at ¶ 16).

Veterans has further submitted an affidavit from Ken Duquette, who asserts that he was the project manager for Veterans and that the as-built drawings created by MDR were incomplete and inadequate in several material respects.  In particular, he asserts that "the drawings do not represent or show all of the changes and locations of unforeseen conditions/utilities that were discovered through the course of the Project"; that "[the] drawings prepared and provided by MDR only show approximately 10% - 20% of the found utilities and unforeseen conditions discovered while installing the water line"; and that "[t]here are no marked up redline drawings from any of MDR's subcontractors that include previously mentioned electrical conduit from PIVs, locations where asbestos-covered material was abated, and any changes to fire piping."  (Docket No. 51, Exhibit 4, ¶ 9-10, 12).

###    B.    Procedural Background

On February 11, 2023, MDR filed a complaint asserting claims against Veterans for breach of contract (Count 1); quantum meruit (Count 2); fraud (Count 3); and violation of Mass. Gen. Laws ch. 93A, § 11 (Count 4).  It also asserted a payment bond claim under the Miller Act, U.S.C. §§ 3131, 40 *et seq.*, against Veterans and Great Midwest (Count 5).

The Court set a deadline of June 9, 2023, for the filing of dispositive motions.  On June 9, 2023, MDR moved for summary judgment on Count 1.  On June 30, 2023, 21 days after the deadline, Veterans filed its own motion for summary judgment as to Counts 3 and 4.  In response, on July 21, 2023, MDR moved to strike the motion for partial summary judgment and portions of the affidavit of Ken Duquette as untimely filed.

## II.   <u>Standard of Review</u>

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). Summary judgment shall be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted).  In evaluating a summary judgment motion, the court indulges all reasonable inferences in favor of the nonmoving party. *See O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993).  When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotations omitted).  The nonmoving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id.* at 256-57.

## III.   <u>Analysis</u>

### A.   <u>MDR Motion for Partial Summary Judgment</u>

MDR has moved for summary judgment on its breach of contract claim (Count 1).  Under Massachusetts law, to assert a claim for breach of contract, a plaintiff must allege that (1) a valid contract between the parties existed; (2) the plaintiff was ready, willing, and able to perform; (3) the defendant breached that contract; and (4) the defendant's breach caused the plaintiff damage. *See Netcracker Tech. Corp. v. Laliberté*, 2020 WL 6384312, at *5 (D. Mass. Oct. 30, 2020) (citing *Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013)).

7

A material breach of an agreement is a breach of "an essential and inducing feature of the contract." *Teragram Corp. v. Marketwatch.com, Inc.*, 444 F.3d 1, 11 (1st Cir. 2006).  Such a breach by either party to an agreement will excuse the other party from further performance of their responsibilities under the agreement.  *Id.*  Such a breach can also excuse the non-breaching party from contractual obligations that do not take effect until after the termination of the contract.  *Ward v. American Mut. Liability Ins. Co.*, 15 Mass. App. Ct. 98, 101 (1983).  The question of whether a material breach has occurred is generally left to the trier of fact.

Here, "[t]here is no dispute that a valid contract exists between Veterans and MDR, and no dispute that Veterans is withholding amounts from MDR."  (Docket No. 47, 8; *see also* Docket No. 52, 9-10).  The parties disagree, however, as to whether MDR has "performed its obligations under the Subcontract and Veterans has materially breached the Contract by improperly withholding payment."  (Docket No. 47, 8).

Veterans first contends that MDR failed to submit copies of as-built drawings to it, as required by the contract, and that it did not waive that contractual obligation and permit MDR to submit the drawings directly to the VA.  Of course, Veterans could waive that requirement, or otherwise modify the agreement, by instructing MDR to submit the drawings directly to the owner.  To the extent Veterans claims that the contract cannot be modified, that position is obviously incorrect as a matter of law.  While it appears to be undisputed that Veterans instructed MDR to submit the drawings directly, there is nevertheless at least some ambiguity as to whether that modification was somehow rescinded when the VA "nullified" that "unauthorized acceptance" of the as-built drawings.  (*See* Docket No. 52,  ¶ 16).

In any event, and more significantly, Veterans contends that the drawings as submitted were incomplete and inadequate.  The Court cannot assess, on the present record, whether that

assertion is true, and certainly cannot grant summary judgment to MDR on that basis.

Thus, resolving all doubts in favor of Veterans as the non-moving party, and construing the evidence in the light most favorable to it, the question of whether MDR performed under the contract, and therefore whether Veterans breached the contract by failing to pay MDR in full, cannot be resolved at summary judgment. *See O'Connor*, 994 F.2d at 907. MDR's motion for partial summary judgment will therefore be denied.

### B.     <u>Veterans Motion for Partial Summary Judgment</u>

MDR contends that the motion of Veterans for partial summary judgment should be denied as untimely. Veterans admits that its motion was filed after the relevant deadline, but contends that it did not act in "bad faith" and that the "option" to file only became "viable for Veterans after an in-depth review of MDR's partial motion for summary judgment." (Docket No. 59, 8-9).

On May 18, 2023, the Court held a status conference during which it set amended deadlines for the filing of motions for summary judgment. The Court informed the parties that motions would be due on or before June 9, 2023, oppositions would be due on or before June 30, 2023, and replies would be due on or before July 10, 2023.[1]

MDR moved for summary judgment on Count 1 on June 9, 2023. Veterans did not file any motions on that date. Veterans did not seek an extension of time, either before or after the deadline passed, or otherwise seek leave of the court to file a late submission. Instead, and without apology, it simply filed its motion for partial summary judgment on June 30, 2023, 21 days after the deadline.

---

[1] Both the docket and the transcript from the status conference clearly indicate those deadlines. (*See* Docket No. 45).

Where "a court has set[ ] a reasonable due date, the parties are expected to act by that date or risk the foreseeable consequences of noncompliance." *Rivera-Aponte v. Gomez Bus Line, Inc.*, 62 F.4th 1, 9 (1st Cir. 2023) (internal quotation marks omitted) (upholding a magistrate judge's decision to strike plaintiff's opposition to defendants' motion for summary judgment). One foreseeable consequence of noncompliance with a deadline is "a decision striking the . . . untimely submission." (*Id.*).  That is because "[e]ven when there is no prejudice to a party, disregarding court-imposed deadlines works prejudice to the court itself, which has a strong institutional interest in ensuring that litigants honor court orders so that it may efficiently administer its docket."  (*Id.*) (internal quotation marks omitted).

Because Veterans never offered any reason—much less any compelling justification—as to why it required additional time, its motion for partial summary judgment will be denied as untimely.  *See Moringlane-Ruiz v. Trujillo-Panisse*, 232 F. App'x 8 (1st Cir. 2007); *Secure Our City, Inc. v. ECI Sys., LLC*, 594 F. Supp. 3d 96 (D. Mass. 2022) (granting defendants' motion to strike plaintiffs' untimely motion for partial summary judgment).

## C.    MDR's Motion to Strike

MDR has moved under Fed. R. Civ. P. 12(f) to strike both the motion of Veterans for partial summary judgment and portions of the affidavit of Ken Duquette filed at the same time.[2] MDR asserts that Duquette was "never designated as an expert," was not  the "Rule 30(b)(6) designee of Veterans," and was not actually the project manager for the project at issue in this case.  (Docket No. 57, 4-5).  Furthermore, MDR contends that it never had "an opportunity to challenge Mr. Duquette's methodology or credentials because those were never disclosed" and

---

[2] To the extent the motion to strike is directed at the motion for partial summary judgment, it will be denied as moot.

never had "an opportunity to depose him" about his opinions" and that it is "inherently unfair for Veterans to try to change its Rule 30(b)(6) testimony at this stage." (*Id.* at 5-6).

Pursuant to Fed. R. Civ. P. 12(f), the court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f) specifically gives the court discretion as to whether or not to strike a particular item, although motions to strike are generally disfavored. *See Zurich Am. Ins. Co. v. Watts Regulator Co.*, 796 F. Supp. 2d 240, 246 (D. Mass. 2011) (citing *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988)). Motions to strike are rarely granted absent a showing of prejudice to the moving party. *Hayes v. McGee*, 2011 WL 39341, at *2 (D. Mass. Jan. 6, 2011) (citing *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 182 F.R.D. 386, 398 (D.R.I. 1998)).

The motion to strike the Duquette affidavit will be denied. First, to the extent the affidavit was submitted in opposition to MDR's motion for partial summary judgment, it was timely filed. Second, it does not appear to contain expert testimony within the meaning of Fed. R. Civ. P. 26(a)(2) and Fed. R. Evid. 702; Duquette was not engaged to render an opinion, and his testimony appears to be based on his personal observations and experience. To the extent that MDR contends that his statement that he was the project manager is false, that raises a dispute of credibility that the Court cannot resolve in this context. Finally, to the extent MDR contends that Duquette's affidavit testimony contradicts the deposition testimony provided by Veterans under Fed. R. Civ. P. 30(b)(6), the issue also appears to raise matters of credibility, and in any event the Court has not been provided with an adequate evidentiary record from which it could even perform an evaluation of that issue.

## IV.   Conclusion

For the foregoing reasons,

1.   The motion of plaintiff MDR Construction Co., Inc., for partial summary

judgment is DENIED;

2. The motion for partial summary judgment of defendant Veterans Construction,

LLC is DENIED; and

3. The motion of plaintiff MDR Construction Co., Inc., to strike is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  February 16, 2024