UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| MDR CONSTRUCTION CO., INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO. 1:22-CV-10238-FDS |
| VETERANS CONSTRUCTION, LLC, and | ) |
| | ) |
| GREAT MIDWEST INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## JOINT PRETRIAL MEMORANDUM

Pursuant to the Court's March 14, 2024 Order for Pretrial Memorandum (ECF No. 67), the parties hereby submit the following pretrial memorandum in advance of the May 2, 2024 status conference.

1. **Summary of Evidence**

   a. **Plaintiff**

MDR anticipates that the evidence will show that on March 21, 2019, the Department of Veterans Affairs (the "VA") contracted with Veterans Construction, LLC ("Veterans") to upgrade hot water and plumbing at its Bedford Facility (the "Project"). On or about May 29, 2019, MDR subcontracted with Veterans on the Project.

The evidence will further show that the original Subcontract amount was $4,284,928.65; after change orders, the subcontract amount increased to $8,359,478.53. Veterans received final payment. Yet Veterans refuses to pay MDR $71,333.55. MDR anticipates the evidence will show that Veterans failed to make final payment due to personal spite.

Specifically, during an early 2022 walkthrough of the Project, MDR addressed with Veterans the outstanding balance and Veterans's slow pace of payments. Veterans's President and Rule 30(b)(6) designee, Frank Kemp, testified that he was insulted by his MDR counterpart. Based on this, Mr. Kemp made the decision to stop making the periodic payments, as confirmed by his sworn testimony: "I can tell you that I stopped payment when Mr. Saccone denigrated me in front of one of his employees." Mr. Kemp also testified that the payments never resumed.

The evidence will show that on February 23, 2021, the VA's Contract Officer Representative, Brian Reid, stated that the VA had accepted MDR's as-builts as of October 22, 2021, and all work was complete on the Project. Consistently, Veterans took the position in its final pay application that all work was completed, received full payment, and, notably, never returned any payment to the VA.

The evidence will show that Veterans certified that all project work was completed to the VA.  The VA confirmed all work was completed and approved of the work.  Despite this, Veterans has not paid MDR in full.  The evidence will further show that Veterans represented to the VA that it was not seeking a lesser amount for itself by virtue of any legitimate withholding, and in contradiction to Mr. Kemp's own sworn testimony that he merely chose to withhold payment based on personal spite. Veterans has not contractual basis or mechanism to withhold payment, as it did not adhere to 31 U.S.C. § 3905(h)'s requirements, nor the prime or subcontract's requirements for withholding payment.

Veterans took the position in its pay application that all work was completed, received full payment, and, notably, never returned any payment to the VA. The evidence will demonstrate that Mr. Kemp's honest and candid testimony was the true reason for Veterans's failure to issue

final payment. Moreover, the evidence will demonstrate that Veterans, through its unfair and deceptive business practices, e.g., withholding payment for personal spite, violated G.L. c. 93A.

**b. Defendant**

Veterans is withholding payment in the amount of $71,335.55 from MDR as a result of MDR's lack of performance under the subcontract as it relates to the preparation of an adequate and complete set of As-Built Drawings for Veterans' review.

Throughout the course of the Project, Veterans took issue with several aspects of MDR's work and lack of performance under the subcontract. The As-Built Drawings and O&Ms prepared by MDR were incomplete and inadequate as they failed to account for every change and modification made at the Project. MDR's President, Mr. Saccone, testified at MDR's 30(b)(6) deposition that he never personally examined the As-Built Drawings, and was basing his answers about the quality of the As-Built Drawings on "standard operating procedure."

The As-Built Drawings prepared and improperly submitted by MDR to the VA do not show or include all of MDR's subcontractors' work on the Project, including, but not limited to the electrical and mechanical work. Specifically, the As-Built Drawings prepared by MDR do not: (1) clarify all new pipe sizes, (2) show all piping entering the buildings, (3) layout the inside of the buildings and connection points, (4) identify depth and obstructions, (5) show gate valves and curb stops and valve boxes and sizes of each, (6) show fire protection As-Builts, (7) note areas where asbestos material was removed, (8) show retaining wall and loading dock, and (9) match lines do not line up showing locations of new piping correctly.

Moreover, the As-Built Drawings were required to include all three hundred (300) contract changes, modifications, and clarifications as it relates to MDR's work on the Project. Section 1.12(A) of the specifications expressly states: "The contractor shall maintain two full

size sets of as-built drawings which will be kept current during construction of the project, to include all contract changes, modifications and clarifications." Section 1.12(C) of the specifications expressly states "Contractor shall deliver two approved completed sets of as-built drawings in the electronic version (scanned PDF) to the Contracting Officer's Representative within 15 calendar days after each completed phase and after the acceptance of the project by the Contracting Officer's Representative."

The Red Line As-Built Drawings prepared by MDR and reviewed at a January 2021 meeting among MDR, Veterans, and the VA, were not to be considered the final and complete set of As-Built Drawings. Further, the Meeting Minutes from the January 2021 meeting do not negate MDR's contractual obligation to submit the As-Built Drawings only to Veterans as required by the subcontract.

On or about October 21, 2021, the inadequate and incomplete As-Built Drawings prepared by MDR were improperly submitted to the VA as they were submitted directly from MDR itself. Although Mr. Reid, who was the Contracting Officer's Representative, advised MDR that the VA accepted MDR's submittal of the As-Built Drawings, the Contracting Officer, Mr. Coutermarsh, ultimately nullified Mr. Reid's unauthorized acceptance of the As-Built Drawings on behalf of the VA.

Specifically, on or about March 1, 2022, Mr. Coutermarsh advised Veterans and Mr. Reid that in order for the Project to be completed, a set of As-Built Drawings needs to be submitted to the VA by Veterans after Veterans' own review and approval of the As-Built Drawings. Pursuant to the subcontract and specifications, MDR was to prepare an adequate and complete set of As-Built Drawings and submit them directly to Veterans.

Article 7 of the subcontract expressly states "Final payment shall be due only when the Subcontractor shall furnish the Contractor (a) a final release and lien waiver of all claims of the Subcontractor against the Contractor and Owner, (b) an affidavit in a form Contractor approves, listing all Sub-Subcontractors and Materialmen certifying there are no liens or rights to lien, claims or demands by any of them, (c) as-built drawings, maintenance manuals and warranties for the Subcontractor's work."

Upon receipt of the As-Built Drawings from MDR, Veterans would then review the As-Built Drawings for adequacy and completeness. If the As-Built Drawings prepared by MDR were found to be satisfactory and compliant with all applicable regulations and codes, Veterans would then submit the As-Built Drawings directly to the VA for the VA's own acceptance and approval. In regard to seeking final payment from the VA, it is Veterans' standard operating procedure to bill the VA for final payment while waiting for closeout documents, including As-Built Drawings.

At the time Veterans sought final payment from the VA, Veterans had neither actual nor constructive knowledge that MDR would withhold the As-Built Drawings, O&Ms, and warranty letters, as Veterans did not have such issues in the past with other subcontractors on other Projects.

At an early 2022 walkthrough of the Project, MDR's President, Mr. Saccone, denigrated Veterans' President, Mr. Kemp, by calling him a "scumbag" and a "disgrace to the military." Veterans' President, Mr. Kemp, is a disabled Vietnam War veteran.  MDR's President, Mr. Saccone, made the disparaging remarks towards Veterans' President, Mr. Kemp, as a result of Veterans withholding periodic payments from MDR for its lack of performance under the subcontract.

Veterans' decision to withhold periodic payments from MDR occurred well before Mr. Saccone made his disparaging remarks towards Mr. Kemp. MDR's President, Mr. Saccone, testified at MDR's 30(b)(6) deposition that Veterans began withholding periodic payments from MDR prior to his disparaging remarks. Veterans' decision to withhold periodic payments from MDR was only due to the fact that MDR never submitted or provided Veterans with an adequate and complete set of As-Built Drawings, O&Ms, and warranty letters.

To date, Veterans' is only withholding payment from MDR as a result of MDR's continuous refusal to provide Veterans with an adequate and complete set of As-Built Drawings as required by the subcontract.

Veterans has always and remains willing to pay $71,333.55 to MDR upon Veterans' receipt of a complete and adequate set of As-Built Drawings. Veterans is requesting a complete and adequate set of As-Built Drawings so it can both review and approve the As-Built Drawings for Veterans' own submittal directly to the VA as is required by the subcontract.

**2.   Facts established by pleadings or by stipulations or admissions of counsel.**

   **a.   Plaintiffs**

MDR contends that the following undisputed facts were established by the pleadings, stipulations, or admissions of counsel.

1. On March 21, 2019, the Department of Veterans Affairs (the "VA") contracted with Veterans to upgrade hot water and plumbing at its Bedford Facility (the "Project").

2. On or about May 29, 2019, MDR subcontracted with Veterans on the Project.

3. The original Subcontract amount was $4,284,928.65; after change orders, the subcontract amount increased to $8,359,478.53.

4. Veterans has failed to pay MDR $71,335.55 for its work on the Subcontract.

5.  Veterans was paid in full on the project by the VA.

    **b.  Defendant**

None.

**3.  Contested Issues of Fact**

    **a.  Plaintiffs**

At this time, MDR disagrees with the characterization of facts and evidence in Veterans's summary of evidence section for the reasons detailed in its summary judgment filings, including without limitation whether Veterans withheld payment based on personal spite.

    **b.  Defendants**

Defendants disagree with MDR's position on communications, contractual obligations, and other issues surrounding the allegations against the Defendants.   The Defendants also refer to its summary judgment filings.

**4.  Jurisdictional Questions**

    **a.  Plaintiffs**

MDR does not believe there are any jurisdictional questions.

    **b.  Defendant**

    **None.**

**5.  Pending Motions**

    **a.  Plaintiffs**

There are currently no pending motions.

    **b.  Defendant**

None.

**6.  Issues of Law**

### a. **Plaintiffs**

As set forth in its summary judgment papers, MDR currently identifies the following issues of law and reserves its right to revise its statement ahead of trial:

### i.   Veterans Materially Breached the Contract

To prevail on a breach of contract claim, a plaintiff must demonstrate that: 1) there was an agreement between the parties; 2) the plaintiff performed under the contract; 3) the defendant breached the contract; and 4) the plaintiff suffered harm as a result. *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672 (2016).

As detailed in its summary judgment filings, MDR will establish at trial that Veterans Materially breached the Contract by failing to pay MDR based on personal spite.

### ii.   Veterans Committed Fraud

Fraud comes in different forms; one type consists of fraudulent misrepresentations. Where a defendant knowingly or recklessly makes a misrepresentation that induces another to act, the elements of fraud are met. *See Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 226 (D. Mass. 1990). Because proof of intent and other aspects of fraud can be difficult to present and needs to be evaluated by the factfinder, the First Circuit has advised caution when disposing of such claims on summary judgment. *Id*.

As detailed in its summary judgment filings, MDR will establish that Veterans made false statements to the VA and MDR through its pay applications.

Veterans's misrepresentations also came in the form of statements and promises to MDR that it would be paid in full, albeit late and through periodic payments. And Veterans's misrepresentations came in the form of statements – both affirmative and through omissions – that both it and the VA considered MDR's work complete.

MDR reasonably relied on all of Veterans's representations. They remained on the job and worked to complete the project. Had MDR known Veterans would not pay, it would have stopped work or sought a means of securing payment. Veterans's continued to slow-pay MDR until Veterans achieved everything it needed to justify keeping the money it received from the VA.

Fraud can also come in the form of improper acts and practices designed to mislead. *Sullivan v. Five Acres Realty Tr.*, 487 Mass. 64, 73 (2021) ("conduct calculated to mislead and which in fact do mislead one who is acting reasonably are enough to constitute fraud.") From the start of this project, Veterans told MDR that it needed to step into the shoes of a general contractor and deal directly with the VA. During subsequent meetings, the VA requested that MDR directly forward things like the as-built drawings. Veterans agreed with this procedure and throughout the various project phases this was done without objection by either the VA or Veterans. Now, Veterans contends it did not authorize this, after MDR relied on Veterans's representations to its detriment.

### iii.   Veterans Violated G.L. c. 93A

For the purposes of G.L. c. 93A, § 11, "[a] practice is unfair if it is within ... the penumbra of some common-law, statutory, or other established concept of unfairness." *Linkage Corp. v. Trustees of Boston Univ.*, 425 Mass. 1, 27, (1997), quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 596 (1975). The "focus [is] on the nature of challenged conduct and on the purpose and effect of that conduct." *Massachusetts Employers Ins. Exch. v. Propac–Mass, Inc.*, 420 Mass. 39, 43 (1995). "[C]onduct undertaken as leverage to destroy the rights of another party to" a contract constitutes an unfair act. *Id*. Because unfair and deceptive conduct is best discerned from the circumstances of each case and is a question of fact. *Kattar v. Demoulas*,

433 Mass. 1, 14 (2000).

Chapter 93A is not limited to fraudulent or other tortious behavior. A breach of contract can also constitute a Chapter 93A violation. *Massachusetts Employers Ins. Exch. v. Propac–Mass, Inc*., 420 Mass. 39, 43 (1995). Even where a jury rejects breach of contract or misrepresentation claim, Chapter 93A remedies remain viable and justify separate consideration. *See Klairmont v. Gainsboro Rest., Inc.*, 465 Mass. 165 (2013); *Specialized Tech. Res., Inc. v. JPS Elastomerics Corp.*, 80 Mass. App. Ct. 841 (2011). As discussed by the First Circuit in Baker, the court considering the Chapter 93A claim is not bound by a jury's verdict on parallel common law claims. *Id*.

Chapter 93A claims must be decided under the "particular set of acts, in their factual setting." *See Milliken & Co. v. Duro Textiles, LLC*, 451 Mass. 547, 563 (2008). Courts have held that business extortion and improperly withholding payment to extract concessions like a reduction are violations. *Anthony's Pier Four, Inc. v. HBC Assocs.*, 411 Mass. 451, 475 (1991) (finding that use of a pretext to coerce other party to perform more than the contract required establishes willful G.L. c. 93A violation as a matter of law); *NExTT Solutions, LLC v. XOS Techs., Inc*., 113 F. Supp. 3d 450, 460 (D. Mass. 2015) (declining to dismiss Chapter 93A claim where plaintiff alleged that defendant intentionally withheld payments after having obtained access to and benefitted from plaintiff's services).

Likewise, a pattern of stringing a plaintiff along to secure the benefit of its services can constitute a Chapter 93A violation.  *The Community Builders, Inc. v. Indian Motocycle Assocs., Inc*., 44 Mass. App. Ct. 537, 559 (1998) (defendant company violated c. 93 A through a pattern of stringing plaintiff company along, inducing it by repeated promises of payment to continue to render services but failing to pay).

Additionally, Courts have ruled that violations of other statutes can constitute violations of Chapter 93A. *See Whitehall Co. Ltd. v. Merrimack Valley Distrib. Co*., 56 Mass. App. Ct. 853, 858 (2002) ("violation of a specific statute that does not itself permit private recovery may give rise to a private claim under c. 93A if the violation amounts to an unfair method of competition or an unfair or deceptive practice independently prohibited by G.L. c. 93A, § 2, and if recovery under c. 93A is compatible with the objectives and enforcement mechanisms the underlying statute contains."); *see also* 940 C.M.R. 3.16.[1]

Thus, the type of behavior in which Veterans engaged qualifies for Chapter 93A consideration. The evidence points to a finding of Veterans's Chapter 93A liability. Below is a brief summary of Veterans's unfair and deceptive acts and practices:

- Proffering false reasons to its surety to prevent issuance of payment owed to MDR for completed work;

- Repeatedly certifying to the VA that MDR's work was complete, then withholding payment to MDR;

- Promising that it would make full payment to MDR, without intending to do so, to induce MDR to complete the project;

- Directing MDR to submit documents directly to the VA throughout the project, then reversing course and stating MDR was not allowed to do so to falsely justify

---

[1] Veterans's conduct violated 31 U.S.C. § 3905(h) ("A prime contractor may not request payment from the agency of any amount withheld or retained…until such time as the prime contractor has determined and certified to the agency that the subcontractor is entitled to the payment of such amount."). Even if this is not a traditional consumer protection statute normally under the purview of 940 CMR 3.16, it should be considered so here where the public is impacted by contractor misrepresentations on public projects for the VA.

withholding payment.

iv.   *Evidentiary Issues.*

1.   MDR Will Offer Deposition Testimony During Case in Chief.

Pursuant to Fed. R. Civ. P. 30(b)(6), 32(a)(1) and (3), MDR intends to use part of the deposition testimony offered by Veterans during its case in chief.  In accordance with Fed. R. Civ. P. 32(c), MDR will provide a transcript of any deposition testimony it offers and plans to read those portions aloud into the record. MDR likewise anticipates using the Defendants' interrogatory answers, statements, and pleadings in accordance with the Federal Rules of Evidence.

2.   Duquette's Testimony Regarding The As-Builts is Inadmissible Expert Testimony.

Under rule 701, a lay witness may provide an opinion that is (1) rationally based on the witness's perception; (2) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (3) not based on scientific, technical, or other specialized knowledge within the scope of rule 702. Fed. R. Evid. 701.

Expert testimony, in contrast, is only permissible if a witness is "qualified as an expert by knowledge, skill, experience, training, or education" and the proffered testimony meets four requirements:

(1) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (2) the testimony is based on sufficient facts or data; (3) the testimony is the product of reliable principles and methods; and (4) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993).

The 2000 amendments to Rule 702 make clear that any part of a witness' testimony that is based upon scientific, technical, or other specialized knowledge within the scope of Rule 702 is governed by the standards of Rule 702 and the corresponding disclosure requirements of the Federal Rules of Civil Procedure. Moreover, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705." Fed. R. Evid. 26(a)(2)(A).

Additionally, Courts recognize that expert testimony is generally required for construction drawings or plans. *Hayes v. CRGE Foxborough, LLC*, 167 F. Supp. 3d 229 (D. Mass. 2016), *citing Enrich v. Windmere Corp.*, 416 Mass. 83, 88–89, 616 N.E.2d 1081 (1993).

Ken Duquette's affidavit ("Duquette Affidavit") which included testimony based upon scientific, technical or another specialized knowledge concerning as-built drawings, is inadmissible at trial. Within the Duquette Affidavit, Duquette states that he has over 35 years of experience in the construction industry, specializing in managing projects in Civil/Heavy, Marine and Building Construction.

Notably, Duquette characterizes his testimony as his "professional opinion" or in other words, the specialized knowledge that he obtained over 35 years of specializing as a project manager in the construction industry. Duquette formed the testimony within the Duquette Affidavit based on his professional opinion, drawing from his specialized, professional experiences, as such, Duquette's testimony constitutes expert testimony under Fed. R. Evid. 702.

   3.   <u>Veterans Should Be Precluded From Testifying About The Adequacy Of The As-Built Drawings.</u>

The as-built issue is Veterans's sole remaining defense, yet it failed to provide a witness prepared to answer questions on this matter. The practical effect is that Veterans failed to appear at a deposition on the subject of the as-builts.  "Producing an unprepared [Rule 30(b)(6)] witness

13

is tantamount to a failure to appear at a deposition." *Calzaturficio S.C.A.R.P.A. S.P.A. v. Fabiano Shoe Company, Inc.*, 201 F.R.D. 33, 39 (D. Mass. 2001). "If the agent of [ a corporation] is not knowledgeable about relevant facts, and the principal has failed to designate an available, knowledgeable, and readily identifiable witness, then the appearance is, for all practical purposes, no appearance at all." *Id.* (citations omitted).

Where, as here, the party's failure to appear results from an unprepared Rule 30(b)(6) witness, courts equate this to a lack of evidence regarding the subject matter. *See, e.g., AVX Corp. v. Cabot Corp.*, 252 F.R.D. 70, 77-81 (D. Mass. 2008) (ruling that party's producing an unprepared Rule 30(b)(6) designee on damages could not be corrected by a supplemental interrogatory answer after the completion of all other discovery and that the appropriate sanction was to preclude substance of supplemental answer).

   **b.  Defendant**

The defendant does not anticipate any unusual issues of law.  To the extent that the plaintiffs raise issues in this motion, the defendants respectfully suggest that such issues either (i) recite the plaintiffs' theories of liability based upon the plaintiffs' view of the evidence, which the defendants dispute; or (ii) raise common disputes in civil litigation and can be resolved through agreement of the parties or appropriate pre-trial motions.

**7.  Any Requested Amendments to the Pleadings.**

   **a.  Plaintiffs**

At this time, there are currently no anticipated amendments to the pleadings, however MDR reserves the right to supplement this response.

   **b.  Defendant**

**8.  Any Additional Matters to Aid in the Disposition of the Action;**

a. **Plaintiffs**

At this time, there are currently no anticipated additional matters to aid in the disposition of the action, however MDR reserves the right to supplement this response.

b. **Defendant**

**None at this time.**

9. **Probable Length of Trial**

The Parties anticipate the trial to last four to five trial days.

10. **Witness List**

a. **Plaintiffs**

At this time, the Plaintiff anticipates that the following witnesses may be called at trial. Plaintiff reserves all rights to amend or supplement its anticipated witnesses and to call rebuttal witnesses:

- <u>Dan Melican</u>.  Mr. Melican is a Project Manager for MDR and may be contacted through counsel for MDR.

- <u>Jason Walker</u>.  Mr. Walker is the Director of Operations for MDR and may be contacted through counsel for MDR.

- <u>Jon Richard</u>. Mr. Richard is a Project Supervisor for MDR and may be contacted through counsel for MDR.

- <u>Michael Saccone</u>.  Mr. Saccone is the President of MDR and may be contacted through counsel for MDR.

- <u>Brian Reid</u>.  Mr. Reid is the VA's Project Architect/Engineer and the Contracting Officer Representative on the Project and has a business address of Edith Nourse Rogers

Memorial Veterans Hospital, 200 Springs Road, Bedford, MA 01730 and a cell phone number of (339) 234-1097.

- <u>Richard Countermarsh</u>.  Mr. Countermarsh was the VA's Contracting Officer for the Project with a business address of 718 Smyth Road, BST Suite 105, Manchester, NH 03104 and a phone number 603-626-6525.

- <u>Christopher Field</u>. Mr. Field is the VA's current Contracting Officer with a business address of 1 VA Center (90C), Augusta, ME 04330 with a telephone number 207-623-8411 ext. 2229.

- <u>Robert McCusker</u>.  Mr. McCusker was the assistant chief of engineering for the VA on the Project with a business address of Edith Nourse Rogers Memorial Veterans Hospital, 200 Springs Road, Bedford, MA 01730 and an office number of 781-687-4481.

- <u>Frank Kemp</u>. Mr. Kemp of Veterans has a business address of 2 Granite Avenue, Milford, MA 02186 and may be contacted through Counsel for Veterans.

- <u>Bob Mattie</u>. Mr. Mattie of Veterans has a business address of 2 Granite Avenue, Milford, MA 02186 and may be contacted through Counsel for Veterans.

- <u>Suzanne Baker</u>. Ms. Baker of Veterans has a business address of 2 Granite Avenue, Milford, MA 02186 and may be contacted through Counsel for Veterans.

- <u>Ken Duquette</u>. Mr. Duquette of Veterans has a business address of 2 Granite Avenue, Milford, MA 02186 and may be contacted through Counsel for Veterans.

- <u>Pamela Goller</u>. Ms. Goller of Veterans has a business address of 2 Granite Avenue, Milford, MA 02186 and may be contacted through Counsel for Veterans.

- <u>Alex Kahn</u>. Claims Representative, The Great Midwest Insurance Company ("Great Midwest") with a business address of 800 Gessner Road – Suite 600, Houston TX 77024 and may be contacted through counsel for Great Midwest.

- Corporate designees, representatives, or keeper of records representatives of parties or third-parties.

- MDR reserves the right to call any witnesses identified by Veterans.

**b.  <u>Defendant</u>**

- Defendant anticipates presenting testimony from the same witnesses identified by the plaintiffs.

**11. <u>Proposed Exhibit List</u>**

**a.  <u>Plaintiff</u>**

At this time, the Plaintiff anticipates that the following evidence will be established at trial. Plaintiff reserves all rights to amend or supplement its anticipated evidence and to introduce rebuttal evidence or evidence on issues about which party bears the burden of proof.

    i.   All Project documents;

    ii.  All Veterans Construction, LLC requisitions on the Project;

    iii. All Project daily reports;

    iv.  Veterans's submissions to the VA on the Project;

    v.   February 23, 2022 email from Brian Reid;

    vi.  January 2021 Veterans Construction LLC Meeting Minutes;

vii. Depending on trial developments and the evidence introduced by Veterans at trial, MDR reserves the right to introduce communications or correspondence by Richard Coutermarsh;

viii. April 4, 2022 Veterans Construction LLC Official Punch List Letter;

ix. March 21, 2019 Prime Contract;

x. May 29, 2019 Subcontract;

xi. March 7, 2023 MDR Construction Co., Inc. pay log;

xii. December 14, 2021 MDR Construction Co., Inc. requisition 47;

xiii. December 14, 2018 project specifications;

xiv. July 30, 2021, August 2, 2021, October 13, 2021, October 21, 2021, and February 23, 2022 email thread between MDR Construction Co., Inc., the Department of Veterans Affairs, and Veterans Construction LLC;

xv. Veterans's answers to MDR's interrogatories;

xvi. Great Midwest Insurance Company's answers to MDR's interrogatories;

xvii. December 2, 2021 claim letter to Veterans and Great Midwest;

xviii. December 13, 2021 claim letter to Alex Khan;

xix. MDR reserves the right to supplement its proposed exhibit list herein with additional documents or exhibits, reserves the right to use the Parties' interrogatory answers and deposition transcripts and pleadings as appropriate, and reserves the right to object to any documents in Veterans's proposed exhibit list below ahead of trial.

**b.  Defendants**

i. All Project documents;

ii.   All Veterans Construction, LLC requisitions on the Project;

iii.   All Project daily reports;

iv.   Veterans's submissions to the VA on the Project;

v.   February 23, 2022 email from Brian Reid;

vi.   January 2021 Veterans Construction LLC Meeting Minutes;

vii.   Depending on trial developments and the evidence introduced by Veterans at trial, MDR reserves the right to introduce communications or correspondence by Richard Coutermarsh;

viii.   April 4, 2022 Veterans Construction LLC Official Punch List Letter;

ix.   March 21, 2019 Prime Contract;

x.   May 29, 2019 Subcontract;

xi.   March 7, 2023 MDR Construction Co., Inc. pay log;

xii.   December 14, 2021 MDR Construction Co., Inc. requisition 47;

xiii.   December 14, 2018 project specifications;

xiv.   July 30, 2021, August 2, 2021, October 13, 2021, October 21, 2021, and February 23, 2022 email thread between MDR Construction Co., Inc., the Department of Veterans Affairs, and Veterans Construction LLC;

MDR Construction Co., Inc.,

By its attorneys,


/s/ *Herling D. Romero*

Michael P. Sams (BBO# 567812)
Herling D. Romero (BBO# 703870)
KENNEY & SAMS, P.C.
Reservoir Nine
144 Turnpike Road, Suite 350
Southborough, MA 01772
T:  (508) 490-8500
F:  (508) 490-8501
mpsams@KSlegal.com
hdromero@KSlegal.com

Veterans Construction, LLC, and
Great Midwest Insurance Company,

By their attorneys,


/s/ *Stephen J. Orlando*

Jay S. Gregory, BBO#546708
jgregory@grsm.com
857-504-2021
Stephen J. Orlando, BBO# 687670
sorlando@grsm.com
857-504-6101
GORDON & REES SCULLY
MANSUKHANI, LLP
21 Custom House Street, 5th Floor
Boston, MA 02110

## **CERTIFICATE OF SERVICE**

I, Herling D. Romero, hereby certify that on April 26, 2024, the foregoing document was filed electronically with the Clerk of Court using the CM/ECF system and will be sent electronically to the registered participants as identified on the notice of Electronic Filing.

*/s/ Herling D. Romero*
Herling D. Romero